Delbert THOMPSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 55702.

Court of Criminal Appeals of Texas.

Nov. 9, 1977.

522

Anthony F. Constant, Corpus Christi, for appellant.

John H. Flinn, Dist. Atty., Sinton, Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ODOM, Judge.

This is an appeal from a conviction for failure to stop and render aid following an automobile accident. Art. 6701d, Sec. 38, V.A.C.S. Appellant pled guilty before the court and evidence was received by stipulation with appellant's consent pursuant to Art. 1.15, V.A.C.C.P. The court assessed punishment at five years, and placed appellant on probation.

One of the terms of appellant's probation is:

"Pay restitution in the amount of $12,-000.00 to the Probation Officer of San Patricio County, Texas, for the benefit of Gary Grissom at a rate of $200.00 per month, beginning April 1, 1977, and the same day of each month thereafter until full restitution has been made."

Appellant challenges the imposition of this condition of probation. He contends the order of restitution (1) violates due process, (2) is supported by no evidence of causation between the offense and the injury, (3) violates the constitutional prohibition of imprisonment for debt, (4) violates public policy by using the criminal justice system to enforce potential civil liability, (5) exceeds the trial court's jurisdiction, (6) is an unreasonable condition and abuse of discretion because it takes over half of appellant's gross income, and (7) is supported by no evidence of the damages suffered by the person compensated.

In support of his due process argument appellant cites the Michigan case of *People v. Becker*, 349 Mich. 476, 84 N.W.2d 833, 838, for the proposition that restitution ". . . can be imposed only as to loss caused by the very offense for which defendant was tried and convicted." He also argues he was denied notice and a jury determination of liability and damages.

Article 42.12, Sec. 6, V.A.C.C.P., provides in part:

"The court having jurisdiction of the case shall determine the terms and conditions of probation and may, at any time, during the period of probation alter or modify the conditions; . . . Terms and conditions of probation may include, but shall not be limited to, the conditions that the probationer shall:

\*     \*     \*     \*     \*     \*

"h. . . . make restitution or reparation in any sum that the court shall determine; . . ."

Appellant waived his right to trial by jury in this case and applied for probation. He was thus on notice that restitution could be ordered by the trial court in the event his application for probation were granted. The centerpiece of appellant's position is that the injuries were inflicted before the commission of the offense for which appellant was convicted. If the facts do not support appellant on this, his contention is without merit irrespective of the power to require restitution for injuries unrelated to the offense. Cf. *Flores v. State*, Tex.Cr. App., 513 S.W.2d 66, in which that issue likewise was not reached.

Article 6701d, Sec. 38, supra, provides in part:

"(a) The driver of any vehicle involved in an accident resulting in injury to or death of any person shall immediately stop such vehicle at the scene of such accident or as close thereto as possible but shall then forthwith return to and in every event shall remain at the scene of the accident until he has fulfilled the requirements of Section 40. . . ."

Section 40 thereof provides:

"The driver of any vehicle involved in an accident resulting in injury to or death of any person or damage to any vehicle which is driven or attended by any person shall give his name, address, and the registration number of the vehicle he is driving and shall upon request and if available exhibit his operator's, commercial operator's or chauffeur's license to the person struck or the driver or occupant of or person attending any vehicle colliding [sic] with and shall render to any person injured in such accident reasonable assistance, including the carrying, or the making of arrangements for the carrying, of such person to a physician, surgeon, or hospital for medical or surgical treatment if it is apparent that such treatment is necessary or if such carrying is requested by the injured person."

The evidence introduced by stipulation included appellant's judicial confession and the statements of several witnesses. The judicial confession states:

"I, Delbert Thompson, on the 21st day of August, A.D. 1976, in San Patricio County, Texas, did then and there drive a vehicle, to-wit, an automobile, on a public road and while driving said vehicle I did strike Gary Grissom with said vehicle so driven by me, Delbert Thompson, and I did then and there and thereby injure the person of Gary Grissom, and I, Delbert Thompson, did then and there unlawfully fail to stop and render reasonable assistance to the said Gary Grissom, in this, I, Delbert Thompson, did then and there fail to stop and carry and fail to make arrangements for the carrying of the said Gary Grissom to a physician and surgeon for medical and surgical treatment, it being apparent that such treatment was necessary by reason of said injuries received as aforesaid."

Three witnesses at the scene gave the following statements:

"When the car passed us going down the street Gary commented that it might be his sister looking for him. He walked out in the street to see. The car pulled right up to his legs and stopped, he

leaned towards the car as if trying to see in, then the car moved forward knocking him down, he screamed and they began to drag him down the street. We began to chase them screaming for them to stop, they slowed down, then speeded back up until they reached the corner, they stopped at the intersection, then took off to the right on Ave. A and rolled over him then sped away."

"The car went to the end of the road and slowly turned around. Then the car slowly approached Gary and Russell the car about to a halt [sic] Russell moved to the side and Gary leaned forward to see who was in the car, the car slowly came up on him bumped him knocking him down under the right front, Gary yelled very loud but the car did not stop it kept going. Instantly we realized what happened and began to yell but they kept going. They slowed as if they knew what had happened then drug Gary under the car to the corner of Ave. A and McCoullough Lane. They then slowed as if to see if any traffic was coming, they rolled over Gary turned right on Ave. A [sic]."

"They were driving slow. Gary and I walked to the road. I was on the edge close to my driveway, Gary was on the edge on the other side. They pulled up and I stepped aside. They pulled right up to him, coming to a near stop. Gary bent over as if he was looking in to see who it was. The car started moving, Gary yelled and I stopped back towards Alan and Cowin, about by the Murphey's trash cans it slowed down like maybe they were looking back, then started going again, all three of us started yelling, they got to the corner and slowed down as if checking the traffic. And rolled down over Gary."

A passenger in appellant's car gave a statement that was introduced under stipulation, and which stated in part:

"Delbert Thompson drove in a dead end street and after he turned around he started back to the main road. At this time I saw 2 men in front of the car. Delbert Thompson was still driving and he was driving real slow, the man that was at the right front of the car put his hands on the hood of the car. I saw when the car hit him and he went under the car. Delbert Thompson stoped [sic] the car for a few seconds and then drove on, the man was under the car and I heard one quick scream I could feel the back tires spinning on the body. Delbert Thompson drove a good ways until the man came out on the rear of the car."

The police report in evidence states that Grissom was dragged 156 feet by appellant's vehicle as indicated by a trail of blood down the roadway from the initial accident.

■ The evidence set out above showed that appellant as driver of the vehicle struck Grissom, and then, instead of stopping to render aid, he drove on, dragging Grissom over fifty yards down the roadway. The witnesses outside the vehicle said the car slowed down after the initial accident, and then drove on. Appellant's passenger stated the car stopped "for a few seconds and then drove on" after the initial accident, dragging Grissom down the roadway. Appellant's argument that the accident was completed and the injuries suffered before and independently of the commission of the offense is not supported by the record. Appellant committed the instant offense when he failed to stop and render aid after the initial collision with Grissom. The evidence shows that after this initial, low-speed collision, appellant stopped the car or at least slowed down, and then drove on, dragging Grissom a considerable distance down the roadway and rolling over him. Restitution was ordered for injuries caused by appellant's failure to stop and render aid.

The first ground of error is overruled.

Appellant also contends that no evidence of causation between the offense and injury was presented. This we overrule on the evidence set out and discussed under the first ground of error.

■ Appellant claims violation of Texas Constitution Article 1, Section 18, which provides, "No person shall ever be impris-

oned for debt." Appellant argues violation of this provision on the theory that any liability for injuries arose prior to and independently of the crime to which he pled guilty. This basis for his position is unfounded, as demonstrated in the discussion under ground of error one, above. We also observe the following notes in the Interpretive Commentary, 1 Vernon's Ann.Tex. Const., at p. 445:

> "In general, the liability to pay money growing out of contract constitutes a debt within the meaning of the constitutional guaranty. . . . Hence the phrase imprisonment for debt has no application to criminal proceedings, nor to imprisonment meted out as a punishment for violation of the laws and for a refusal to submit to the penalty imposed. *Ex parte Robertson*, 27 Tex.App. 628, 11 S.W. 669 (1889); *Dixon v. State*, 2 Tex. 481 (1847)."

This ground of error is overruled.

■ Appellant next asserts that restitution violates public policy. The Legislature has specifically authorized restitution as a condition of probation. See Art. 42.12, Sec. 6(h), quoted above. We hold that restitution as a condition of probation is not a violation of public policy. The ground of error is overruled.

■ In his next ground appellant contends the trial court lacked jurisdiction to order restitution. Art. 42.12, Sec. 6(h), supra, specifically grants this power to the court having jurisdiction of the criminal case. The contention is without merit.

■ Appellant also argues the order for restitution is unreasonable under the facts of this case because it takes over half of his gross income. First, probation may not be revoked for failure to pay monies when the probationer is financially unable to make payment. Art. 42.12, Sec. 8(c), V.A.C.C.P., as amended effective Aug. 29, 1977, provides:

> "In a probation revocation hearing at which it is alleged that the probationer violated the conditions of probation by failing to pay compensation paid to appointed counsel, probation fees, court costs, restitution, or reparations, the inability of the probationer to pay as ordered by the court is an affirmative defense to revocation, which the probationer must prove by a preponderance of evidence."

Second, if the payments ordered in the conditions of appellant's probation prove to be too onerous, the court has the power to alter or modify those conditions. See Art. 42.12, Sec. 6, as quoted above. The trial court on the record before us demonstrated an awareness of this authority:

> "The Court places you on probation as to the five years confinement in the penitentiary and on the condition . . . that you make restitution to this injured person in the amount of twelve thousand dollars, and I don't know whether you can make it or not, but make such as you can."

> "THE COURT: Of course, I realize how much the Court has control of these things, and if it gets to where it's an impossible burden, why the Court takes cognizance of that, and makes some adjustment."

This ground of error is overruled.

■ Finally, appellant asserts there is no evidence of the damages suffered by Grissom. The State cites evidence of Grissom's condition at the scene and at the hospital emergency room, and asserts Grissom was in court and seen by the judge. Restitution was not defined by the Legislature. In Black's Law Dictionary, Rev. 4th ed., we find this definition:

> "Act of restoring; restoration; restoration of anything to its rightful owner; the act of making good or giving equivalent for any loss, damage or injury; and indemnification."

We find no evidence that $12,000[1] is just restitution for the damages and injuries

---

1. In an informal discussion at the bench, after the probation conditions had been imposed, appellant's counsel, in arguing that the restitu-

tion payments were too onerous for appellant, stated, "I understand fully that his damages are probably more than that." This was not evi-

suffered by Grissom. Since the error relates to the probation condition only, and since the trial court set the condition, the cause will be remanded for a hearing to determine the amount of restitution to be ordered. Compare *Bullard v. State*, Tex.Cr. App., 533 S.W.2d 812, 816.

The judgment of conviction is affirmed, the amount of restitution ordered is set aside, and the cause is remanded for a hearing to determine the amount of restitution to be ordered.

DOUGLAS, Judge, concurring in part and dissenting in part.

The opinion by the majority is correct except that part which orders the cause remanded for hearing to determine the amount of restitution to be made by appellant. After probation had been granted and while the question of restitution was being discussed, there was no question as to the amount. The only question raised was the ability of the appellant to pay the amount.

The evidence shows that the car that appellant was driving ran into Grissom and dragged him underneath for many yards. Before the car went completely over him, a passenger felt a tire spinning over Grissom's body. Later, an officer arrived at the scene, found Grissom in the middle of McCullough Lane and observed a large pool of blood on the road that measured three feet long and one and one-half feet wide. His face and neck were bleeding heavily. There was a hole in the chin which appeared to go to the throat area. A large amount of blood was coming from the left side of his neck and the skin was pulled away from the neck area. The lower left ear was torn from his face. He was taken to a hospital emergency room and placed on a Stryker frame. His face and neck were then surgically repaired. The doctor reported that he had suffered "horrible facial injuries. . . ."

The officers found a pair of prescription glasses at the scene of the collision. One lens was completely shattered and the frame was bent at a ninety degree angle. The officers also recovered nine human teeth. With respect to appellant's automobile, they discovered blood stains on the right front wheel and on the right side back to the rear axle. Hair was taken from the under part of the floorboard area and also from the rear axle area.

Since there was no question as to the extent of the injury when the trial judge heard the evidence and saw the injured party, this Court should not remand the cause for a hearing on the amount of damages. After probation had been granted, and while its terms were being discussed, appellant, through his counsel, waived any question on the amount of damages when counsel stated: "I understand fully that his damages are probably more than that." From the above, the trial judge was authorized to assess the amount of restitution at $12,000.

---

dence, nor was it a stipulation, nor was it even an unequivocal statement of counsel's personal opinion. It no more supports the setting of restitution at $12,000 than does the fact that the victim was present in the courtroom and viewed by the court.