NUMBER 13-03-707-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


SERGIO VELA BARRERA, Appellant,


v.



THE STATE OF TEXAS, Appellee.

 


On appeal from the 389th District Court of Hidalgo County, Texas.


 


O P I N I O N



Before Justices Yañez, Rodriguez, and Garza


Opinion by Justice Yañez


 


 A jury convicted appellant, Sergio Vela Barrera, of murder. The trial court
sentenced him to 99 years' imprisonment, imposed a $10,000 fine, and assessed
restitution at $12,000. In four issues, appellant asserts that (1) the evidence supporting
his conviction is legally and factually insufficient, (2) the trial court committed reversible
error when it ordered restitution, (3) prosecutorial misconduct occurred when the
prosecutor testified to facts that were not before the jury, and (4) he received ineffective
assistance of counsel. We modify the trial court's judgment and affirm it as modified.

I. Background

 On the evening of April 15, 2001, Maria del Socorro Barrrera went dancing with her
friend, Maribel Pena. After Maria and Maribel returned to their separate homes, Maria
called Maribel at approximately 9:00 p.m.; the two spoke on the phone for about 30 to 60
minutes. At approximately 11:00 to 11:30 p.m., appellant went to the home of James and
Laura Dodd. Appellant, who was Maria's brother-in-law and lived next door to her, (1) told the
Dodds that Maria was hurt. The Dodds and appellant went to Maria's home, where they
found her lying dead on the floor. The police were called to the home, where they
subsequently gathered evidence and took statements. A medical examination would
reveal that Maria had been stabbed 61 times. Appellant was eventually indicted for murder
in connection with Maria's death.

II. Legal and Factual Sufficiency of the Evidence

 Texas law provides that a person commits murder if the person "intentionally or
knowingly causes the death of an individual." (2) In his first issue, appellant contends the
State introduced legally and factually insufficient evidence to establish that he caused
Maria's death.

1. Standards of Review

 Evidence is legally insufficient if, when viewed in a light most favorable to the
verdict, a rational jury could not have found each element of the offense beyond a
reasonable doubt. (3) The jury is the exclusive judge of the credibility of witnesses and of the
weight to be given testimony, and it is also the exclusive province of the jury to reconcile
conflicts in the evidence. (4) Thus, when performing a legal-sufficiency review, we may not
re-evaluate the weight and credibility of the evidence and substitute our judgment for that
of the fact finder. (5) We must resolve any inconsistencies in the testimony in favor of the
verdict. (6)

 When conducting a factual-sufficiency review, we view all of the evidence in a
neutral light. (7) We may set the verdict aside if (1) the evidence is so weak that the verdict
is clearly wrong and manifestly unjust; or (2) the verdict is against the great weight and
preponderance of the evidence. (8) However, while we may disagree with the jury's
conclusions, we must exercise appropriate deference to avoid substituting our judgment
for that of the jury, particularly in matters of credibility. (9) Finally, we must discuss the
evidence that, according to appellant, most undermines the jury's verdict. (10)

2. The Evidence is Legally Sufficient

 The Dodds' testimony revealed that appellant did not contact police when he found
Maria's body and did not do so afterwards. Instead, appellant searched for Maria's car
keys and took her car to the Dodds' residence. Upon arriving at the Dodds' residence,
appellant told them that Maria was hurt but that he did not want them to call the police
because he was afraid of being deported. Before returning to Maria's home with the
Dodds, he told them that he did not want to return to the home and that he did not want the
Dodds to tell anyone that he had visited their home. The Dodds, however, contacted the
police and informed them of appellant's visit.

 When police officers arrived at the scene, appellant told officers that he had heard
Maria's dogs barking at around 11:00 or 11:30 p.m. Appellant then saw two men being
chased by the dogs; these men jumped over Maria's chainlink fence and fled in a truck. 
The police examined the area of the fence the men had allegedly jumped over and
observed undisturbed cobwebs along the top of the fence line. Furthermore, a police
officer testified that Maria's dogs did not appear to be aggressive; in fact, the dogs did not
have to be secured when police arrived at Maria's home.

 The officers who questioned appellant the night of the murder testified that they saw
cuts and scratches on his hands. Appellant initially could not explain how his hands
sustained cuts; he later claimed, however, that he cut his hands while pruning a lemon tree
in his backyard. According to one officer's testimony, it is common for an assailant who
stabs another to cut himself in the process.

 The physical evidence collected from the crime scene and appellant's residence
showed the following: (1) an Easter decoration and a paper towel collected from Maria's
back porch had appellant's blood on them; (2) clothes collected from appellant's room and
from appellant's person all had appellant's blood on them; and (3) a baseball cap collected
from appellant's room was tested in four places and had both appellant's and Maria's
blood. An expert in DNA analysis testified he could distinguish between blood stains
created by blood spatter as opposed to blood transfer. According to the expert, the blood
stains on appellant's cap were consistent with blood spatter. (11)

 Lastly, witnesses testified that there was no evidence of theft or forced entry; in fact,
the front door was locked and secured. Witnesses also testified that Maria and appellant
did not have a good relationship and that Maria did not like appellant.

 Viewing this evidence in the light most favorable to the verdict, we find that a rational
trier of fact could have reasonably inferred, beyond a reasonable doubt, that appellant
intentionally and knowingly caused Maria's death. The jury was at liberty to disbelieve
statements appellant made to the Dodds and to the police, (12) and it is clear that it exercised
this liberty in arriving at its verdict. Appellant's conviction was supported by circumstantial
evidence, which, by itself, may be enough to support the jury's verdict. (13) In reviewing the
sufficiency of the evidence, we may look at events occurring before, during, and after the
commission of the offense. (14) Therefore, in light of appellant's conduct on the night of the
murder, the State's blood evidence, and the testimony regarding appellant and Maria's bad
relationship, we find that the evidence is legally sufficient to support appellant's conviction.

3. The Evidence is Factually Sufficient

 Appellant complains that there is no direct evidence linking him to Maria's murder. 
The knife the State asserted was the weapon used to kill Maria contained no fingerprints. (15) 
With regards to the presence of appellant's blood on various items, appellant contends that
traces of his blood were located because he had cuts on his hands sustained from pruning
a tree and because he often coughed up blood as a result of having tuberculosis. 
Appellant also contends that the presence of the cobwebs on the fence does not disprove
his contention that he saw two men jump the fence. Lastly, appellant asserts that evidence
uncovered by police indicates that there are other likely suspects that are responsible for
Maria's death.

 We conclude that appellant's conviction is not clearly wrong or manifestly unjust, nor
is it against the great weight and preponderance of the evidence. We first note that each
fact need not point directly and independently to the guilt of appellant (e.g., the knife used
in the murder), as long as the cumulative effect of all the incriminating facts are sufficient
to support the conviction. Furthermore, the court of criminal appeals has held that:

 the State is not required to exclude to a moral certainty every hypothesis that
the offense may have been committed by another person; it must only
exclude every reasonable hypothesis that might exist from the facts, which
hypothesis must be consistent with the facts proved and the circumstances,
and the premise that the offense may have been committed by another
person must not be out of harmony with the evidence. (16)


We find that the State excluded every reasonable hypothesis that might exist from the
facts. Accordingly, after viewing the evidence in a neutral light, we find that the evidence
is factually sufficient to support appellant's conviction.

III. Restitution

 In his second issue, appellant contends the trial court erred in awarding restitution
without (1) "pretrial notice to the Appellant of said amount of restitution;" (2) "a jury finding
on the issue of restitution;" and (3) "presentation of evidence on the issue of restitution." 
The law cited by appellant to support the first two arguments is inapposite; furthermore,
article 42.037 of the Texas Code of Criminal Procedure, which governs restitution orders,
clearly shows that these arguments lack merit. (17) We do believe, however, that there is
merit to appellant's claim that the amount of restitution is not supported by evidence.

 When an offense results in the death of the victim, the trial court may order the
defendant to make restitution to the victim's estate. (18) The court shall resolve any dispute
relating to the proper amount or type of restitution. (19) The standard of proof is a
preponderance of the evidence. (20) The burden of demonstrating the amount of the loss
sustained by a victim as a result of the offense is on the prosecuting attorney. (21) An
appellate court reviews restitution orders under an abuse of discretion standard. (22) An
abuse of discretion by the trial court in setting the amount of restitution will implicate due-process considerations. (23) 

 In the instant case, Nancy Nereyda Garza, Maria's niece, was the only witness to
testify during the punishment phase. Though Garza testified as to how Maria's death
affected her and family members, she did not include any facts pertaining to funeral
expenses stemming from Maria's burial. At the conclusion of Garza's testimony, the trial
judge pronounced her judgment, leading to the following exchange between her and the
prosecutor:

 Court: You are ordered to pay restitution in the amount of--


 Prosecutor: I don't know, Judge.


 Court: Is the family here?


 Prosecutor: The family is here, Judge.


 Court: Do you know what the funeral charges, expenses, were?


 Prosecutor: $12,000.00.


 Court: Were there [sic] funeral expenses?


 Prosecutor: Yes, those are the funeral expenses.


 Court: You are ordered to pay restitution in the amount of $12,000.00 to the
family of the victim.


The State contends on appeal that this verbal exchange provides a sufficient evidentiary
basis for the court's restitution order because a "factual assertion made by State's counsel
informing the trial court that the funeral expenses were $12,000.00 should be accepted as
true because it was not disputed by opposing counsel."

 The cases cited by the State in support of this contention, Pitts v. State (24) and
Hayden v. State, (25) are inapposite. These cases, and other similar cases holding that a
prosecutor's unopposed statement should be accepted as true, generally concern
accepting as true a prosecutor's unchallenged observations regarding trial evidence and
occurrences within the courtroom. They do not stand for the proposition that a prosecutor
may satisfy his evidentiary obligations with his own unopposed statements of fact. We
thus find that the prosecutor's statement that funeral expenses were $12,000.00--a
statement not supported by any documentation or witness testimony--cannot serve as the
trial court's basis for ascertaining the proper amount of restitution to impose. Because
there is no evidence to support the court's restitution order, we find that the court abused
its discretion. Furthermore, contrary to the position argued by the State, we find that
appellant's failure to object to the restitution order did not waive his evidentiary sufficiency
complaint on appeal. (26)

 Without citing to authority, appellant requests this Court to delete the restitution
order from the judgment. The State, on the other hand, does not recommend what course
of action we should take in the event that we find there is insufficient evidence to support
the order.

 In Barton v. State, the Texas Court of Criminal Appeals stated:

 Where restitution is a lawful condition of community supervision, but the
specific amount imposed by the trial court is unsupported by the record, . . .
the proper remedy is to abate the appeal, set aside the amount of restitution,
and remand the cause for a hearing to determine a just amount of
restitution. (27)


The remedy endorsed in Barton is consistent with that court's previous opinions, (28) which
have been followed by intermediate appellate courts confronted with factually similar
situations. (29) Some intermediate appellate courts, however, have limited the scope of this
remedy. These courts have found that when there is insufficient evidence to support
restitution serving as a condition of parole, as opposed to a condition of probation or
community supervision, the proper remedy is to reform the trial court's judgment by striking
the restitution provision. (30) Furthermore, this Court has declined to remand for a hearing
to determine a just amount of restitution when it has determined that the amount of
restitution was unsupported by the record and that restitution was imposed along with a
sentence of confinement; (31) this is a course of action other courts have followed. (32)

 We continue to believe that in a case such as this--in which (1) restitution has been
imposed along with a sentence of confinement, (2) restitution as a condition of probation
or community supervision is not at issue, and (3) there is insufficient evidence to support
the amount of restitution ordered--the proper course of action is to delete the portion of
the trial court's judgment ordering restitution. (33) A trial court has no continuing jurisdiction
under these circumstances, and the State should not be afforded a second opportunity to
present legally sufficient evidence. (34) Accordingly, we sustain appellant's second issue and
reform the trial court's judgment to delete that portion of the judgment setting the amount
of restitution. (35)

IV. Conclusion

 We modify the trial court's judgment and affirm it as modified.



 
 

 LINDA REYNA YAÑEZ,

 Justice






Publish. Tex. R. App. P. 47.2(b).


Opinion delivered and filed this 

the 30th day of August, 2007.

1. Maria was married to appellant's brother, who was deceased at the time of her murder.
2. See Tex. Penal Code Ann. § 19.02(b)(1) (Vernon 2003).
3. Jackson v. Virginia, 443 U.S. 307, 319 (1979); Jones v. State, 944 S.W.2d 642, 647 (Tex. Crim. App.
1996).
4. Jones, 944 S.W.2d at 647.
5. Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999).
6. Curry v. State, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).
7. See Cain v. State, 958 S.W.2d 404, 408 (Tex. Crim. App. 1997); Clewis v. State, 922 S.W.2d 126,
134 (Tex. Crim. App. 1996).
8. Watson v. State, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006) (citing Johnson v. State, 23
S.W.3d 1, 11 (Tex. Crim. App. 2000)).
9. Drichas v. State, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005); see Watson, 204 S.W.3d at 414
(stating that a court should not reverse a verdict it disagrees with, unless it represents a manifest injustice
even though supported by legally sufficient evidence).
10. Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).
11. The expert testified that blood spatter may be caused, "for example, when you are being hit with
a blunt trauma or stabbed or shot anything that would perforate and damage or injure a part of the body that
has blood vessels would cause blood spatter, cause it to shoot out."
12. See Jones, 944 S.W.2d at 647.
13. See Smith v. State, 965 S.W.2d 509, 515-16 (Tex. Crim. App. 1998).
14. See Guevara v. State, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004).
15. We note that the knife was taken from the crime scene by appellant's mother before police could
examine it. The knife was then handed over to police a few days later.
16. Gribble v. State, 808 S.W.2d 65, 74 (Tex. Crim. App. 1990).
17. Tex. Code Crim. Proc. Ann. art. 42.037(a) (Vernon 2006) ("In addition to any fine authorized by law,
the court that sentences a defendant convicted of an offense may order the defendant to make restitution
. . . ."); see Campbell v. State, 5 S.W.3d 693, 696-97 (Tex. Crim. App. 1999).
18. Tex. Code Crim. Proc. Ann. art. 42.037(d) (Vernon 2006).
19. Id. at. art. 42.037(k).
20. Id.
21. Id.
22. Cartwright v. State, 605 S.W.2d 287, 289 (Tex. Crim. App. 1980).
23. Campbell, 5 S.W.3d at 696.
24. Pitts v. State, 916 S.W.2d 507, 510 (Tex. Crim. App. 1996).
25. Hayden v. State, 66 S.W.3d 269, 273 n.17 (Tex. Crim. App. 2001).
26. Idowu v. State, 73 S.W.3d 918, 922 (Tex. Crim. App. 2002) ("We ordinarily allow defendants to
raise sufficiency of the evidence questions for the first time on appeal. Whether the record proves a sufficient
factual basis for a particular restitution order could be considered an evidentiary sufficiency question that need
not be preserved by objection at the trial level.").
27. Barton v. State, 21 S.W.3d 287, 289 (Tex. Crim. App. 2000) (citing Cartwright, 605 S.W.2d at 289).
28. See Cartwright, 605 S.W.2d at 289; Thompson v. State, 557 S.W.2d 521, 525-26 (Tex. Crim. App.
1977).
29. See Drilling v. State, 134 S.W.3d 468, 471 (Tex. App.-Waco 2004, no pet.); Garza v. State, 841
S.W.2d 19, 23 (Tex. App.-Dallas 1992, no pet.).
30. See Miller v. State, No. 01-84-568-CR, 1985 Tex. App. LEXIS 11722, at **6-7 (Tex. App.-Houston
[1st Dist.] June 13, 1985, no pet.) (not designated for publication); Vanderburg v. State, 681 S.W.2d 713, 719-20 (Tex. App.-Houston [14th Dist.] 1984, pet. ref'd); Barker v. State, 662 S.W.2d 640, 642 (Tex.
App.-Houston [14th Dist.] 1983, no pet.).
31. See Garza v. State, 794 S.W.2d 497, 498 (Tex. App.-Corpus Christi 1990, pet. ref'd); Botello v.
State, 693 S.W.2d 528, 530 (Tex. App.-Corpus Christi 1985, pet. ref'd).
32. See Wallace v. State, 75 S.W.3d 576, 584 (Tex. App.-Texarkana 2002), aff'd, 106 S.W.3d 103
(Tex. Crim. App. 2003); Neyra v. State, No. 05-97-00439-CR, 1999 Tex. App. LEXIS 2196, at **6-8 (Tex.
App.-Dallas March 30, 1999, pet. ref'd) (not designated for publication); but see Riggs v. State, No. 05-05-01689-CR, 2007 Tex. App. LEXIS 2589, at *14 (Tex. App.-Dallas April 3, 2007) (mem. op., not designated
for publication); Thursby v. State, No. 05-04-00554-CR, No. 05-04-00555-CR, 2006 Tex. App. LEXIS 4041,
at **7-8 (Tex. App.-Dallas May 11, 2006) (mem. op., not designated for publication); Allen v. State, No. 01-86-00214-CR, 1987 Tex. App. LEXIS 6182, at **1-2 (Tex. App.-Houston [1st Dist.] January 8, 1987, no pet.) (not
designated for publication).
33. See Garza, 794 S.W.2d at 498; Botello, 693 S.W.2d at 530.
34. This reasoning was articulated by the Dallas Court of Appeals in an unpublished opinion in Neyra
v. State, 1999 Tex. App. LEXIS 2196, at **7-8.
35. The only relief appellant seeks through his remaining issues on appeal is to have the restitution
order deleted from the trial court's judgment. Because we have granted this relief in sustaining his second
issue, we need not address issues three and four. See Tex. R. App. P. 47.1.