Sergio Vela **BARRERA,** Appellant,

v.

The **STATE** of Texas, Appellee.

No. 13–03–707–CR.

Court of Appeals of Texas, Corpus Christi–Edinburg.

Aug. 30, 2007.

Rehearing Overruled Oct. 11, 2007.

Victoria Guerra, Attorney At Law, McAllen, TX, for Appellant.

Theodore C. Hake, Assistant Criminal District Atty., Edinburg, TX, for Appellee.

Before Justices YAÑEZ, RODRIGUEZ, and GARZA.

## OPINION

Opinion by Justice YAÑEZ.

A jury convicted appellant, Sergio Vela Barrera, of murder. The trial court sentenced him to 99 years' imprisonment, imposed a $10,000 fine, and assessed restitution at $12,000. In four issues, appellant asserts that (1) the evidence supporting his conviction is legally and factually insufficient, (2) the trial court committed reversible error when it ordered restitution, (3) prosecutorial misconduct occurred when the prosecutor testified to facts that were not before the jury, and (4) he received ineffective assistance of counsel. We modify the trial court's judgment and affirm it as modified.

### I. Background

On the evening of April 15, 2001, Maria del Socorro Barrrera went dancing with her friend, Maribel Pena. After Maria and Maribel returned to their separate homes, Maria called Maribel at approximately 9:00 p.m.; the two spoke on the phone for about 30 to 60 minutes. At approximately 11:00 to 11:30 p.m., appellant went to the home of James and Laura Dodd. Appellant, who was Maria's brother-in-law and lived next door to her,[1] told the Dodds that Maria was hurt. The Dodds and appellant went to Maria's home, where they found her lying dead on the floor. The police were called to the home, where they subsequently gathered evidence and took statements. A medical examination would reveal that Maria had been stabbed 61 times. Appellant was eventually indicted for murder in connection with Maria's death.

### II. Legal and Factual Sufficiency of the Evidence

Texas law provides that a person commits murder if the person "intentionally or knowingly causes the death of an individual."[2] In his first issue, appellant contends the State introduced legally and factually insufficient evidence to establish that he caused Maria's death.

### 1. Standards of Review

Evidence is legally insufficient if, when viewed in a light most favorable to the verdict, a rational jury could not have found each element of the offense beyond a reasonable doubt.[3] The jury is the exclusive judge of the credibility of witnesses and of the weight to be given testimony, and it is also the exclusive province of the jury to reconcile conflicts in the evidence.[4] Thus, when performing a legal-sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact

---

1. Maria was married to appellant's brother, who was deceased at the time of her murder.

2. *See* Tex. Penal Code Ann. § 19.02(b)(1) (Vernon 2003).

3. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Jones v. State,* 944 S.W.2d 642, 647 (Tex.Crim.App. 1996).

4. *Jones,* 944 S.W.2d at 647.

finder.[5] We must resolve any inconsistencies in the testimony in favor of the verdict.[6]

■ When conducting a factual-sufficiency review, we view all of the evidence in a neutral light.[7] We may set the verdict aside if (1) the evidence is so weak that the verdict is clearly wrong and manifestly unjust; or (2) the verdict is against the great weight and preponderance of the evidence.[8] However, while we may disagree with the jury's conclusions, we must exercise appropriate deference to avoid substituting our judgment for that of the jury, particularly in matters of credibility.[9] Finally, we must discuss the evidence that, according to appellant, most undermines the jury's verdict.[10]

**2. The Evidence is Legally Sufficient**

■ The Dodds' testimony revealed that appellant did not contact police when he found Maria's body and did not do so afterwards. Instead, appellant searched for Maria's car keys and took her car to the Dodds' residence. Upon arriving at the Dodds' residence, appellant told them that Maria was hurt but that he did not want them to call the police because he was afraid of being deported. Before returning to Maria's home with the Dodds, he told them that he did not want to return to the home and that he did not want the Dodds to tell anyone that he had visited their home. The Dodds, however, contacted the police and informed them of appellant's visit.

When police officers arrived at the scene, appellant told officers that he had heard Maria's dogs barking at around 11:00 or 11:30 p.m. Appellant then saw two men being chased by the dogs; these men jumped over Maria's chainlink fence and fled in a truck. The police examined the area of the fence the men had allegedly jumped over and observed undisturbed cobwebs along the top of the fence line. Furthermore, a police officer testified that Maria's dogs did not appear to be aggressive; in fact, the dogs did not have to be secured when police arrived at Maria's home.

The officers who questioned appellant the night of the murder testified that they saw cuts and scratches on his hands. Appellant initially could not explain how his hands sustained cuts; he later claimed, however, that he cut his hands while pruning a lemon tree in his backyard. According to one officer's testimony, it is common for an assailant who stabs another to cut himself in the process.

The physical evidence collected from the crime scene and appellant's residence showed the following: (1) an Easter decoration and a paper towel collected from Maria's back porch had appellant's blood on them; (2) clothes collected from appellant's room and from appellant's person all

---

5. *Dewberry v. State,* 4 S.W.3d 735, 740 (Tex. Crim.App.1999).

6. *Curry v. State,* 30 S.W.3d 394, 406 (Tex. Crim.App.2000).

7. *See Cain v. State,* 958 S.W.2d 404, 408 (Tex. Crim.App.1997); *Clewis v. State,* 922 S.W.2d 126, 134 (Tex.Crim.App.1996).

8. *Watson v. State,* 204 S.W.3d 404, 414–15 (Tex.Crim.App.2006) (citing *Johnson v. State,* 23 S.W.3d 1, 11 (Tex.Crim.App.2000)).

9. *Drichas v. State,* 175 S.W.3d 795, 799 (Tex. Crim.App.2005); *see Watson,* 204 S.W.3d at 414 (stating that a court should not reverse a verdict it disagrees with, unless it represents a manifest injustice even though supported by legally sufficient evidence).

10. *Sims v. State,* 99 S.W.3d 600, 603 (Tex. Crim.App.2003).

had appellant's blood on them; and (3) a baseball cap collected from appellant's room was tested in four places and had both appellant's and Maria's blood. An expert in DNA analysis testified he could distinguish between blood stains created by blood spatter as opposed to blood transfer. According to the expert, the blood stains on appellant's cap were consistent with blood spatter.[11]

Lastly, witnesses testified that there was no evidence of theft or forced entry; in fact, the front door was locked and secured. Witnesses also testified that Maria and appellant did not have a good relationship and that Maria did not like appellant.

 Viewing this evidence in the light most favorable to the verdict, we find that a rational trier of fact could have reasonably inferred, beyond a reasonable doubt, that appellant intentionally and knowingly caused Maria's death. The jury was at liberty to disbelieve statements appellant made to the Dodds and to the police,[12] and it is clear that it exercised this liberty in arriving at its verdict. Appellant's conviction was supported by circumstantial evidence, which, by itself, may be enough to support the jury's verdict.[13] In reviewing the sufficiency of the evidence, we may look at events occurring before, during, and after the commission of the offense.[14] Therefore, in light of appellant's conduct on the night of the murder, the State's blood evidence, and the testimony regarding appellant and Maria's bad relationship,

we find that the evidence is legally sufficient to support appellant's conviction.

### 3. The Evidence is Factually Sufficient

Appellant complains that there is no direct evidence linking him to Maria's murder. The knife the State asserted was the weapon used to kill Maria contained no fingerprints.[15] With regards to the presence of appellant's blood on various items, appellant contends that traces of his blood were located because he had cuts on his hands sustained from pruning a tree and because he often coughed up blood as a result of having tuberculosis. Appellant also contends that the presence of the cobwebs on the fence does not disprove his contention that he saw two men jump the fence. Lastly, appellant asserts that evidence uncovered by police indicates that there are other likely suspects that are responsible for Maria's death.

We conclude that appellant's conviction is not clearly wrong or manifestly unjust, nor is it against the great weight and preponderance of the evidence. We first note that each fact need not point directly and independently to the guilt of appellant (e.g., the knife used in the murder), as long as the cumulative effect of all the incriminating facts are sufficient to support the conviction. Furthermore, the court of criminal appeals has held that:

> the State is not required to exclude to a moral certainty every hypothesis that the offense may have been committed by

---

11. The expert testified that blood spatter may be caused, "for example, when you are being hit with a blunt trauma or stabbed or shot anything that would perforate and damage or injure a part of the body that has blood vessels would cause blood spatter, cause it to shoot out."

12. *See Jones,* 944 S.W.2d at 647.

13. *See Smith v. State,* 965 S.W.2d 509, 515–16 (Tex.Crim.App.1998).

14. *See Guevara v. State,* 152 S.W.3d 45, 49 (Tex.Crim.App.2004).

15. We note that the knife was taken from the crime scene by appellant's mother before police could examine it. The knife was then handed over to police a few days later.

another person; it must only exclude every reasonable hypothesis that might exist from the facts, which hypothesis must be consistent with the facts proved and the circumstances, and the premise that the offense may have been committed by another person must not be out of harmony with the evidence.[16]

We find that the State excluded every reasonable hypothesis that might exist from the facts. Accordingly, after viewing the evidence in a neutral light, we find that the evidence is factually sufficient to support appellant's conviction.

### III. Restitution

 In his second issue, appellant contends the trial court erred in awarding restitution without (1) "pretrial notice to the Appellant of said amount of restitution;" (2) "a jury finding on the issue of restitution;" and (3) "presentation of evidence on the issue of restitution." The law cited by appellant to support the first two arguments is inapposite; furthermore, article 42.037 of the Texas Code of Criminal Procedure, which governs restitution orders, clearly shows that these arguments lack merit.[17] We do believe, however, that there is merit to appellant's claim that the amount of restitution is not supported by evidence.

 When an offense results in the death of the victim, the trial court may order the defendant to make restitution to the victim's estate.[18] The court shall resolve any dispute relating to the proper amount or type of restitution.[19] The standard of proof is a preponderance of the evidence.[20] The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense is on the prosecuting attorney.[21] An appellate court reviews restitution orders under an abuse of discretion standard.[22] An abuse of discretion by the trial court in setting the amount of restitution will implicate due-process considerations.[23]

In the instant case, Nancy Nereyda Garza, Maria's niece, was the only witness to testify during the punishment phase. Though Garza testified as to how Maria's death affected her and family members, she did not include any facts pertaining to funeral expenses stemming from Maria's burial. At the conclusion of Garza's testimony, the trial judge pronounced her judgment, leading to the following exchange between her and the prosecutor:

> Court: You are ordered to pay restitution in the amount of—
>
> Prosecutor: I don't know, Judge.
>
> Court: Is the family here?
>
> Prosecutor: The family is here, Judge.
>
> Court: Do you know what the funeral charges, expenses, were?
>
> Prosecutor: $12,000.00.
>
> Court: Were there [sic] funeral expenses?

---

16. *Gribble v. State,* 808 S.W.2d 65, 74 (Tex. Crim.App.1990).

17. Tex.Code Crim. Proc. Ann. art. 42.037(a) (Vernon 2006) ("In addition to any fine authorized by law, the court that sentences a defendant convicted of an offense may order the defendant to make restitution . . . ."); *see Campbell v. State,* 5 S.W.3d 693, 696–97 (Tex. Crim.App.1999).

18. Tex.Code Crim. Proc. Ann. art. 42.037(d) (Vernon 2006).

19. *Id.* at. art. 42.037(k).

20. *Id.*

21. *Id.*

22. *Cartwright v. State,* 605 S.W.2d 287, 289 (Tex.Crim.App.1980).

23. *Campbell,* 5 S.W.3d at 696.

Prosecutor: Yes, those are the funeral expenses.

Court: You are ordered to pay restitution in the amount of $12,000.00 to the family of the victim.

The State contends on appeal that this verbal exchange provides a sufficient evidentiary basis for the court's restitution order because a "factual assertion made by State's counsel informing the trial court that the funeral expenses were $12,000.00 should be accepted as true because it was not disputed by opposing counsel."

The cases cited by the State in support of this contention, *Pitts v. State*[24] and *Hayden v. State*,[25] are inapposite. These cases, and other similar cases holding that a prosecutor's unopposed statement should be accepted as true, generally concern accepting as true a prosecutor's unchallenged observations regarding trial evidence and occurrences within the courtroom. They do not stand for the proposition that a prosecutor may satisfy his evidentiary obligations with his own unopposed statements of fact. We thus find that the prosecutor's statement that funeral expenses were $12,000.00—a statement not supported by any documentation or witness testimony—cannot serve as the trial court's basis for ascertaining the proper amount of restitution to impose. Because there is no evidence to support the court's restitution order, we find that the court abused its discretion. Furthermore, contrary to the position argued by the State, we find that appellant's failure to object to the restitution order did not waive his evidentiary sufficiency complaint on appeal.[26]

■ Without citing to authority, appellant requests this Court to delete the restitution order from the judgment. The State, on the other hand, does not recommend what course of action we should take in the event that we find there is insufficient evidence to support the order.

In *Barton v. State*, the Texas Court of Criminal Appeals stated:

Where restitution is a lawful condition of community supervision, but the specific amount imposed by the trial court is unsupported by the record, ... the proper remedy is to abate the appeal, set aside the amount of restitution, and remand the cause for a hearing to determine a just amount of restitution.[27]

The remedy endorsed in *Barton* is consistent with that court's previous opinions,[28] which have been followed by intermediate appellate courts confronted with factually similar situations.[29] Some intermediate appellate courts, however, have limited the scope of this remedy. These courts have found that when there is insufficient evidence to support restitution serving as a

**24.** *Pitts v. State*, 916 S.W.2d 507, 510 (Tex. Crim.App.1996).

**25.** *Hayden v. State*, 66 S.W.3d 269, 273 n. 17 (Tex.Crim.App.2001).

**26.** *Idowu v. State*, 73 S.W.3d 918, 922 (Tex. Crim.App.2002) ("We ordinarily allow defendants to raise sufficiency of the evidence questions for the first time on appeal. Whether the record proves a sufficient factual basis for a particular restitution order could be considered an evidentiary sufficiency question that need not be preserved by objection at the trial level.").

**27.** *Barton v. State*, 21 S.W.3d 287, 289 (Tex. Crim.App.2000) (citing *Cartwright*, 605 S.W.2d at 289).

**28.** *See Cartwright*, 605 S.W.2d at 289; *Thompson v. State*, 557 S.W.2d 521, 525–26 (Tex.Crim.App.1977).

**29.** *See Drilling v. State*, 134 S.W.3d 468, 471 (Tex.App.-Waco 2004, no pet.); *Garza v. State*, 841 S.W.2d 19, 23 (Tex.App.-Dallas 1992, no pet.).

condition of parole, as opposed to a condition of probation or community supervision, the proper remedy is to reform the trial court's judgment by striking the restitution provision.[30] Furthermore, this Court has declined to remand for a hearing to determine a just amount of restitution when it has determined that the amount of restitution was unsupported by the record and that restitution was imposed along with a sentence of confinement;[31] this is a course of action other courts have followed.[32]

We continue to believe that in a case such as this—in which (1) restitution has been imposed along with a sentence of confinement, (2) restitution as a condition of probation or community supervision is not at issue, and (3) there is insufficient evidence to support the amount of restitution ordered-the proper course of action is to delete the portion of the trial court's judgment ordering restitution.[33] A trial court has no continuing jurisdiction under these circumstances, and the State should not be afforded a second opportunity to present legally sufficient evidence.[34] Accordingly, we sustain appellant's second issue and reform the trial court's judgment to delete that portion of the judgment setting the amount of restitution.[35]

## IV. Conclusion

We modify the trial court's judgment and affirm it as modified.

30. *See Miller v. State,* No. 01–84–568–CR, 1985 Tex.App. LEXIS 11722, at 6–7 (Tex. App.-Houston [1st Dist.] June 13, 1985, no pet.) (not designated for publication); *Vanderburg v. State,* 681 S.W.2d 713, 719–20 (Tex. App.-Houston [14th Dist.] 1984, pet. ref'd); *Barker v. State,* 662 S.W.2d 640, 642 (Tex. App.-Houston [14th Dist.] 1983, no pet.).

31. *See Garza v. State,* 794 S.W.2d 497, 498 (Tex.App.-Corpus Christi 1990, pet. ref'd); *Botello v. State,* 693 S.W.2d 528, 530 (Tex. App.-Corpus Christi 1985, pet. ref'd).

32. *See Wallace v. State,* 75 S.W.3d 576, 584 (Tex.App.-Texarkana 2002), *aff'd,* 106 S.W.3d 103 (Tex.Crim.App.2003); *Neyra v. State,* No. 05–97–00439–CR, 1999 WL 170812, at *3, 1999 Tex.App. LEXIS 2196, at **6–8 (Tex. App.-Dallas March 30, 1999, pet. ref'd) (not designated for publication); *but see Riggs v. State,* No. 05–05–01689–CR, 2007 WL 969586, at *3, 2007 Tex.App. LEXIS 2589, at *14 (Tex.App.-Dallas April 3, 2007) (mem. op., not designated for publication); *Thursby v.*

*State,* No. 05–04–00554–CR, No. 05–04–00555–CR, 2006 WL 1389774, at *1, 2006 Tex.App. LEXIS 4041, at **7–8 (Tex.App.-Dallas May 11, 2006) (mem. op., not designated for publication); *Allen v. State,* No. 01–86–00214–CR, 1987 WL 5181, at *1, 1987 Tex. App. LEXIS 6182, at **1–2 (Tex.App.-Houston [1st Dist.] January 8, 1987, no pet.) (not designated for publication).

33. *See Garza,* 794 S.W.2d at 498; *Botello,* 693 S.W.2d at 530.

34. This reasoning was articulated by the Dallas Court of Appeals in an unpublished opinion in *Neyra v. State,* 1999 WL 170812, at *3, 1999 Tex.App. LEXIS 2196, at **7–8.

35. The only relief appellant seeks through his remaining issues on appeal is to have the restitution order deleted from the trial court's judgment. Because we have granted this relief in sustaining his second issue, we need not address issues three and four. *See* Tex. R.App. P. 47.1.