

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-14-00242-CR

TANNER PAUL LANGDON, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 242nd District Court
Hale County, Texas
Trial Court No. B19590-1401, Honorable Edward Lee Self, Presiding

April 13, 2015

## MEMORANDUM OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

Appellant, Tanner Paul Langdon, appeals the trial court's judgment by which he was convicted of the Class A misdemeanor offense of theft of property valued at $500 or more but less than $1,500 and sentenced to 365 days' confinement in the Hale County Jail, said sentence being suspended and appellant being placed on community supervision.[1]  On appeal, he contends that the trial court erred by refusing to include in its charge to the jury a charge on the Class B misdemeanor offense of theft of property

---

[1] *See* TEX. PENAL CODE ANN. § 31.03(a), (e)(3) (West Supp. 2014).

of a lesser value. He also contends the trial court erred by ordering that he pay restitution to an individual other than the named complainant. We will affirm.

Factual and Procedural History

Rex Hegi farms land in Hale County. In December 2013, he was having work done on an irrigation well that required the drilling company, Hi Plains Drilling, to pull the piping from the ground, and the piping remained out of the ground for some time as the work was being completed. The evidence at trial showed that appellant stole the piping from Hegi's property. Hegi contacted the Hale County Sheriff's Office, which, in turn, contacted area scrap metal dealers and alerted them to the theft and called on them to be on the lookout for someone trying to sell it. There was wide-ranging testimony regarding the value of the piping, both as scrap metal and as functional irrigation well piping.

When it turned out that the local scrap metal business was closed for the holidays, appellant sold the stolen piping to Jackie Wilson, who lived near the scrap metal business, for $200. Wilson testified that he had planned to sell the piping to the scrap metal dealer when it reopened and get $400 to $500 for it as scrap metal. By all accounts, the piping was still usable as irrigation well piping. In fact, when the piping was ultimately returned to Hegi, most of it was reused in the repair to the irrigation well.

Hegi reported to the responding deputy sheriff that the replacement value of the piping and related components was $12,600. Gary McKensie of Hi Plains Drilling testified that, according to industry standards, the piping—still in usable condition— could be sold as used irrigation well piping for sixty-five percent of the cost of new

2

piping: $4,798.11. McKensie also testified that he would negotiate a price of approximately $1,600 for the piping, to be used as piping, if he were trying to buy it used so that he could make a profit by selling it at the sixty-five percent price.

Based on information provided by Wilson to the Hale County Sheriff's Office, appellant was arrested and charged with the state jail felony offense of theft of property valued at $1,500 or more but less than $20,000. At trial, the trial court included in its charge to the jury an instruction on the Class A misdemeanor offense of theft of property valued at $500 or more but less than $1,500. The jury found appellant guilty of this lesser offense. Appellant was sentenced to 365 days' confinement in the Hale County Jail, but said sentence was suspended. Appellant was placed on community supervision, one of the conditions of which being that he serve thirty days in county jail. The trial court also ordered that appellant make restitution to Wilson in the amount of $200. Appellant has timely appealed the trial court's judgment and now contends that the trial court erred when it (1) refused to include in its jury charge an instruction on another lesser-included offense and (2) ordered that restitution be paid to Wilson, who is not a named complainant.

## Lesser-Included Offense

### Standard of Review and Applicable Law

We review a trial court's refusal to include a lesser-included-offense instruction for an abuse of discretion. *See Threadgill v. State*, 146 S.W.3d 654, 666 (Tex. Crim. App. 2004) (en banc). An offense is a lesser-included offense if, among other reasons, it is established by proof of the same or less than all the facts required to establish the

3

commission of the offense charged.  *See* TEX. CODE CRIM. PROC. ANN. art. 37.09(1) (West 2006); *Hall v. State*, 225 S.W.3d 524, 527 (Tex. Crim. App. 2007).  To determine whether a defendant is entitled to an instruction on a lesser-included offense, the Texas Court of Criminal Appeals has developed the two-stepped *Aguilar/Rousseau* test.  *See Cavazos v. State*, 382 S.W.3d 377, 382 (Tex. Crim. App. 2012) (citing *Hall*, 225 S.W.3d at 535–36, and referring to *Rousseau v. State*, 855 S.W.2d 666, 672 (Tex. Crim. App. 1993) (en banc), and *Aguilar v. State*, 682 S.W.2d 556, 558 (Tex. Crim. App. 1985) (en banc)).  First, a court must determine whether the proof necessary to establish the charged offense also included the lesser offense.  *Id.*; *Hall*, 225 S.W.3d 535–36.  If so, a court must then consider whether the evidence shows that, if an appellant is guilty, he is guilty only of the lesser offense.  *See Cavazos*, 382 S.W.3d at 383.

The State concedes that the first step of the lesser-included-offense analysis is satisfied.  The State's concession is well-taken; Class B misdemeanor theft is a lesser-included offense of state jail felony theft.  *See Franklin v. State*, 219 S.W.3d 92, 96 (Tex. App.—Houston [1st Dist.] 2006, no pet.).  With that, we move on to the second step of the applicable test: determining whether a rational jury could find that, if appellant is guilty, he is guilty only of the lesser offense of Class B misdemeanor theft of property valued at less than $500.  *See State v. Meru*, 414 S.W.3d 159, 162–63 (Tex. Crim. App. 2013).  This second step calls for a fact determination based on the evidence presented at trial.  *See id.* at 163.  If there is evidence that raises a fact issue of whether the defendant is guilty only of the lesser offense, an instruction on the lesser-included offense is warranted, regardless of whether the evidence is weak, impeached, or contradicted.  *Id.*; *Cavazos*, 382 S.W.3d at 383.

So, to find that appellant was guilty only of the Class B offense of theft, the jury would have had to find from the evidence presented that the value of the piping appellant stole was less than $500. "Value," for purposes of establishing the level of theft of property offense, is "the fair market value of the property or service at the time and place of the offense" or "the cost of replacing the property within a reasonable time after the theft." *See* TEX. PENAL CODE ANN. § 31.08(a)(1), (2) (West 2011). We look to the record to determine whether there is any evidence from which the jury could have found that the value of the piping was less than $500.

Analysis

Appellant cites Wilson's testimony regarding the money he paid appellant for the piping as scrap metal and the amount of money he expected to receive for the piping as scrap metal. Wilson testified that he paid appellant $200 for the trailer load of pipe and that he hoped to get $400 to $500 from the scrap metal business for the piping when it reopened. This testimony, appellant maintains, is a scintilla of evidence that the value of the stolen property was less than $500 and, therefore, warranted inclusion in the jury charge of an instruction on the Class B misdemeanor offense of theft. Appellant also observes that the deputy sheriff testified that $200 "sounded about right" for scrap metal.

We agree that such figures were presented in the record but must determine whether those figures are relevant figures relating to the "value" of the property stolen. We return to the statutory guidelines for determining "value." "Value," for purposes of establishing the level of theft of property offense, is "the fair market value of the property

or service *at the time and place of the offense*" or "the cost of replacing the property within a reasonable time after the theft."  *See* TEX. PENAL CODE ANN. § 31.08(a)(1), (2) (emphasis added).  We point out that, "at the time and place of the offense," the piping was not simply scrap metal; the piping was more highly valued farm irrigation equipment, crucial to Hegi's farming operations.  So, the figures cited by appellant as relevant to the value of the stolen property as scrap metal are inapposite to the value of the stolen property considering the function and value of that property to the person from whom it was stolen.

To illustrate the incongruence of the figures in the record, we look to a case from a sister court that was presented with a similar contention in a case reviewing a conviction for theft of property valued at over $200,000.  *See Valdez v. State*, 116 S.W.3d 94 (Tex. App.—Houston [14th Dist.] 2002, pet ref'd).  Appellant in that case, "a self-employed individual in the business of purchasing scrap or obsolete computer equipment or excess inventory, assert[ed] his own testimony as to the worth of the parts" stolen to support his contention that the evidence was insufficient regarding the value of the stolen items.  *See id.* at 98–99.  The court observed that appellant's testimony regarding value, though somewhat unclear, represented his own determination of "whether and for how much *he* could sell certain of the stolen items." *See id.* at 99.  In response, the court observed the skewed perspective of appellant's contention: "Appellant's calculation is thus based on a fundamental misperception regarding the valuation of stolen items: the relevant market is not that of the thief, but of the party from whom the item was stolen."  *See id.*

Similarly, here, we do not treat the value of the piping as scrap metal as it was treated in appellant's market; we look to the value of the property as that property was used in the market of the individual from whom it was stolen. That is, the "value" of the piping, as irrigation well equipment central to Hegi's farming operations, was well over $500. There is no evidence that the "value" of the irrigation well piping and components, as such, was less than $500. That being the state of the record, appellant was not entitled to an instruction on the lesser-included offense of Class B misdemeanor theft of property valued at less than $500. We overrule appellant's contention.

Restitution

Appellant contends that, because Wilson was not a named complainant and not a victim of the offense, the trial court abused its discretion when it ordered that appellant pay Wilson $200 as restitution. The State responds that, after having cooperated with law enforcement and returning the piping for which he paid appellant, Wilson suffered a $200 loss as a direct result of appellant's theft and sale of the stolen property.

Standard of Review and Applicable Law

We review a trial court's restitution order for an abuse of discretion. *Fuelberg v. State*, 447 S.W.3d 304, 317–18 (Tex. App.—Austin 2014, pet. ref'd) (citing *Cartwright v. State*, 605 S.W.2d 287, 289 (Tex. Crim. App. [Panel Op.] 1980)).

Restitution is a victim's statutory right and serves a number of important purposes. *Burt v. State*, 445 S.W.3d 752, 756 (Tex. Crim. App. 2014) (citing TEX. CODE CRIM. PROC. ANN. art. 42.037 (West Supp. 2014)). First, it restores the victim to the

7

"status quo ante" position he was in before the offense. *Id.* (citing *Thompson v. State*, 557 S.W.2d 521, 525 (Tex. Crim. App. 1977)). Second, restitution serves as appropriate punishment for the convicted criminal. *Id.* The Texas Court of Criminal Appeals has said, "[a]s punishment, restitution attempts to redress the wrongs for which a defendant has been charged and convicted in court." *See id.* (quoting *Cabla v. State*, 6 S.W.3d 543, 546 (Tex. Crim. App. 1999)). Third, because restitution forces the offender to "address and remedy the specific harm that he has caused," it aids in the rehabilitation process by "forc[ing] the defendant to confront, in concrete terms, the harm his actions have caused." *See id.* (quoting *Hanna v. State*, 426 S.W.3d 87, 91 (Tex. Crim. App. 2014), and *Kelly v. Robinson*, 479 U.S. 36, 49 n.10, 107 S. Ct. 353, 93 L. Ed. 2d 216 (1986)). Fourth, restitution acts as a deterrent to crime. *Id.* (citing *Hanna*, 426 S.W.3d at 91). Indeed, the law so favors crime victims' compensation that our restitution statute requires the trial judge to justify his decision not to order restitution to a crime victim. *Id.* (citing TEX. CODE CRIM. PROC. ANN. art. 42.037(a)). Further, the statute provides that a parole panel "shall order the payment of restitution ordered" under Article 42.037, and it may revoke a defendant's parole or mandatory supervision if he fails to comply with the trial judge's restitution order. *Id.* at 756–57 (citing TEX. CODE CRIM. PROC. ANN. art. 42.037(h)).

For all of these reasons, Texas courts have interpreted restitution statutes liberally to effectuate fairness to the victims of crime. *See id.* at 757 (citing *Hanna*, 426 S.W.3d at 91). This "broad interpretation of the restitution statutes provides judges with 'greater discretion in effectuating opportunities for rehabilitating criminals, deterring future harms, and efficiently compensating victims.'" *Hanna*, 426 S.W.3d at 91 (quoting

8

*Lemos v. State*, 27 S.W.3d 42, 45 (Tex. App.—San Antonio 2000, pet. ref'd)). In light of this liberal interpretation of the restitution statute, a "victim" is any person who suffered loss as a direct result of the criminal offense. *See Hanna*, 426 S.W.3d at 94 (finding that utility company whose telephone pole was struck and damaged by drunk driver was a "victim" of the DWI offense for purposes of restitution). "The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense is on the prosecuting attorney." TEX. CODE CRIM. PROC. ANN. art. 42.037(k). Article 42.037(k)'s phrase "as a result of the offense" includes the notion of both actual and proximate causation. *Hanna*, 426 S.W.3d at 95. "[T]he damage must be a 'direct' result of the defendant's criminal offense—that is, the State must prove, by a preponderance of the evidence, that the loss was a 'but for' result of the criminal offense and resulted 'proximately,' or foreseeably, from the criminal offense." *Id.* Nothing in the Texas Code of Criminal Procedure requires, as a prerequisite to a restitution order, that a victim be alleged in the charging instrument. *Id.* at 96–97. The Texas Court of Criminal Appeals has been careful to point out that Article 42.037 permits the trial court to order a defendant to make restitution to "*any* victim of the offense." *See id.* (emphasis added in *Hanna*).

Analysis

The record shows that appellant sold the stolen piping to Wilson for $200. Wilson cooperated fully with law enforcement when he learned from the scrap metal business that the piping was likely stolen and ultimately cooperated with the arrangements to return the piping to Hegi, never having been compensated for the money he paid for it. Indeed, it was Wilson who had taken down appellant's license

number and provided the Hale County Sheriff's Office with that number and a description of appellant and his vehicle, leading to appellant's arrest. But for appellant's acts of stealing the pipe from Hegi's farm and presenting the stolen pipe for sale as scrap metal, Wilson would not have paid the $200 to appellant. Remaining mindful of the broad interpretation of Article 42.037 and the purposes for which restitution is ordered in a criminal case, we conclude that Wilson could be considered a foreseeable victim of appellant's crime for the purposes of restitution. *See Burt*, 445 S.W.3d at 757; *Hanna*, 426 S.W.3d at 95. With that, the trial court did not abuse its discretion by ordering that appellant make restitution to Wilson in the amount of $200. We overrule appellant's contention to the contrary.

## Conclusion

Having overruled both of appellant's points of error, we affirm the trial court's judgment of conviction. *See* TEX. R. APP. P. 43.2(a).

Mackey K. Hancock
Justice

Do not publish.