

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-23-00117-CR

DAVID WAYNE MITCHELL, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 354th District Court
Hunt County, Texas
Trial Court No. 33459CR

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice Rambin

## MEMORANDUM OPINION

After a jury trial, David Wayne Mitchell was found guilty of theft of property in an amount of $2,500.00 or more, but less than $30,000.00.[1]  After a punishment hearing, the trial court assessed Mitchell ten months' confinement in state jail, with no fine.  At a subsequent restitution hearing, the trial court ordered Mitchell to pay restitution to the victim in the amount of $5,640.00 and entered an amended judgment of conviction that included the restitution award.  On appeal, Mitchell asserts that (1) there is insufficient evidence supporting his theft conviction, (2) the trial court was not authorized to conduct the restitution hearing, (3) the trial court erred when it conducted the restitution hearing without Mitchell's physical presence, and (4) the amended judgment containing the restitution award is void.  Because we find that sufficient evidence supports Mitchell's theft conviction, Mitchell did not preserve his complaints regarding the restitution hearing, and the amended judgment is not void, we will affirm the judgment.

## I.      Sufficient Evidence Supported Mitchell's Theft Conviction

### A.      Standard of Review

"In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt."  *Williamson v. State*, 589 S.W.3d 292, 297 (Tex. App.—Texarkana 2019, pet. ref'd) (citing *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010)).  "Our rigorous review focuses on the quality of the evidence presented."  *Id.* (citing *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring)).  "We examine legal sufficiency

---

[1]*See* TEX. PENAL CODE ANN. § 31.03(a), (e)(4)(A) (Supp.).

under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury 'to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Id.* (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)).

"In our review, we consider 'events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act.'" *Id.* (quoting *Hooper*, 214 S.W.3d at 13). "It is not required that each fact 'point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction.'" *Id.* (quoting *Hooper*, 214 S.W.3d at 13). "Circumstantial evidence and direct evidence are equally probative in establishing the guilt of a defendant, and guilt can be established by circumstantial evidence alone." *Id.* (citing *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13). "Further, 'we must consider all of the evidence admitted at trial, even if that evidence was improperly admitted.'" *Id.* (quoting *Fowler v. State*, 517 S.W.3d 167, 176 (Tex. App.—Texarkana 2017), *rev'd in part*, 544 S.W.3d 844 (Tex. Crim. App. 2018)).

The jury, as "the sole judge of the credibility of the witnesses and the weight to be given their testimony[, could] 'believe all of [the] witnesses' testimony, portions of it, or none of it.'" *Id.* (second alteration in original) (quoting *Thomas v. State*, 444 S.W.3d 4, 10 (Tex. Crim. App. 2014)). "We give 'almost complete deference to a jury's decision when that decision is based

3

upon an evaluation of credibility.'" *Id.* (quoting *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008)).

"Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge." *Id.* at 298 (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "The 'hypothetically correct' jury charge is 'one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* (quoting *Malik*, 953 S.W.2d at 240).

### B. The Evidence at Trial

The evidence at trial showed that Mitchell[2] entered into a contract on August 5, 2019, with Michael Knapp to install a Generac generator at Knapp's house. The parties agreed that the total cost of the generator and installation was $9,400.00, with a down payment of $5,640.00 that Knapp paid to Mitchell on August 5, 2019. Knapp testified that Mitchell told him that he needed the down payment immediately to purchase the generator. Based on Mitchell's representations, Knapp believed he was paying for the generator with the down payment.

Mitchell gave Knapp several excuses for why the generator was not installed before September 26, 2019. On September 26, Mitchell sent a text message to Knapp and represented for the first time that he was having issues with someone regarding the installation of the generator. He also represented to Knapp that the generator would be delivered within two days. After receiving several more excuses from Mitchell, on September 29, Knapp responded to text

---

[2]Mitchell held himself out as doing business as D & D Construction.

4

messages from Mitchell and demanded that Mitchell either deliver the generator to his house by the following Tuesday or refund his money. Then, by text messages on October 6 and October 8, Mitchell promised that the job would be completed by the end of that week.

When Mitchell failed to deliver and install the generator, Knapp offered to pick up the generator from Mitchell's warehouse but got no reply. On October 16, Knapp again demanded that Mitchell either deliver the generator or refund his money. He also threatened to sue Mitchell and file a criminal complaint if Mitchell failed to comply with his demand. The next day, Mitchell sent a text message and offered to "talk through things," and Knapp repeated his previous demands. Knapp filed a criminal complaint.

Later, Mitchell called Knapp and said that he would deliver the generator in November. On November 21, Knapp sent a text message to Mitchell and asked if he was still planning to drop off the generator. Mitchell responded that he would deliver the generator by that weekend. When the generator was not delivered, Knapp again offered, on November 25, to pick up the generator. Mitchell responded and claimed that the first generator he ordered was delivered, that a forklift had been driven through it, and that he had to order another one. He also stated he would not be able to pick up the new generator until the following Monday or Tuesday.

According to Knapp, Mitchell never delivered or installed the generator and never refunded the $5,640.00. Also, Knapp never received from Mitchell a receipt or proof of purchase for any generator.

Knapp filed a criminal complaint against Mitchell on October 15, 2019, and Kelly Phillips, an investigator with the Hunt County Sheriff's Office, investigated the complaint.

Phillips was assigned the case in January 2020. When he talked with Mitchell, Mitchell did not deny that he had a contract with Knapp and that he had cashed the check. Nevertheless, Mitchell did not provide Phillips any documentation that showed he purchased a generator. Phillips also gave Mitchell an opportunity to either pay the money back to Knapp or to deliver the generator. Mitchell said that he would pay the money back. After he made several attempts to get Mitchell to pay the money to Knapp, Phillips had an arrest warrant issued on August 13, 2020.

Mitchell's brother, Rocky, testified that he worked part time for Mitchell after he retired from another job in May 2019. Rocky also testified that, in August 2019, he traveled to Knapp's house with Mitchell and saw a generator in a box sitting in the driveway. He did not know if it had been damaged. On cross-examination, he admitted that, in the text messages from Mitchell to Knapp sent in September, October, and November, Mitchell never claimed that the generator had been delivered in August.

Mitchell admitted that Knapp paid him $5,640.00 for the generator on August 5, 2019. Mitchell also testified that the generator had been delivered in August 2019 but that a fork from a forklift ran through the side of it. He claimed that he had purchased it at Avery Supply but acknowledged that he could not find the receipt.[3] He testified that the generator was not returned, stating, "[W]e couldn't return the generator during COVID." He also claimed that the generator was removed from the property, but he had no idea what happened to it. He admitted that he did not get Knapp another generator but claimed that he did not do so because Knapp did not pay his bills for Mitchell's landscaping work.

---

[3]Mitchell also stated that he could get a receipt from Avery Supply but admitted he had not done so in the two and one-half years between his indictment and his trial.

6

Mitchell also testified that he had ordered another generator from Lowe's and put down a $1,500.00 deposit but that he never received it. However, he did not have a receipt and did not ask Lowe's for a copy of the invoice or work order.

## C.      Analysis

Under the statute and indictment, to convict Mitchell, the State had to show, beyond a reasonable doubt, that, on or about August 5, 2019, Mitchell (1) unlawfully appropriated (2) property with a value of $2,500.00 or more but less than $30,000.00 (3) from the owner, Knapp, (4) without the effective consent of Knapp and (5) with the intent to deprive the owner of the property. *See* TEX. PENAL CODE ANN. § 31.03(a), (e)(4)(A). Mitchell challenges the sufficiency of the evidence to support the jury's verdict. Mitchell only argues that there was insufficient evidence to show that he obtained the money without Knapp's effective consent and that he intended to deprive Knapp of the property. As to both elements, Mitchell points to his self-serving testimony that he purchased the generator and that it was delivered to Knapp's property and to his contention that he did other work for Knapp that exceeded $5,600.00 in value. However, as the fact-finder, the jury was the sole judge of Mitchell's credibility and could believe his testimony or not. *See Thomas v. State*, 444 S.W.3d 4, 10 (Tex. Crim. App. 2014).

As applicable to this case, "[c]onsent is not effective if . . . induced by deception." TEX. PENAL CODE ANN. § 31.01(3)(A). "Deception" includes:

(A)      creating or confirming by words or conduct a false impression of law or fact that is likely to affect the judgment of another in the transaction, and that the actor does not believe to be true;

7

(B)     failing to correct a false impression of law or fact that is likely to affect the judgment of another in the transaction, that the actor previously created or confirmed by words or conduct, and that the actor does not now believe to be true;

. . . or

(E)     promising performance that is likely to affect the judgment of another in the transaction and that the actor does not intend to perform or knows will not be performed, except that failure to perform the promise in issue without other evidence of intent or knowledge is not sufficient proof that the actor did not intend to perform or knew the promise would not be performed.

TEX. PENAL CODE ANN. § 31.01(1)(A), (B), (E).   Also, among other things, "'[d]eprive' means . . . to withhold property from the owner permanently or for so extended a period of time that a major portion of the value or enjoyment of the property is lost to the owner."  TEX. PENAL CODE ANN. § 31.01(2).  Finally, "[a] person acts intentionally, or with intent, with respect to the nature of his conduct . . . when it is his conscious objective or desire to engage in the conduct."[4] TEX. PENAL CODE ANN. § 6.03(a).

Construed in the light most favorable to the jury's verdict, the evidence in this case showed that Mitchell induced Knapp to pay him $5,640.00 on his promise that he would purchase a generator and install it at Knapp's house.  Mitchell repeatedly promised Knapp over several months that the generator would be delivered either within two days, by the end of the week, or by the weekend.  Based on this evidence, along with Mitchell's various excuses for not delivering and installing the generator, the paucity of any evidence that he ever purchased a generator, and his refusal to refund Knapp his money, a rational jury could reasonably infer that Mitchell induced Knapp to pay him money by promising performance that Mitchell did not

---

[4]*See Herrera v. State*, 527 S.W.3d 675, 678 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd) (citing *Ash v. State*, 930 S.W.2d 192, 195 (Tex. App.—Dallas 1996, no pet.) ("unlawful appropriation is a nature-of-conduct element").

intend to perform. Based on this same evidence, a rational jury could reasonably infer that it was Mitchell's conscious objective or desire to withhold Knapp's money from him permanently or for an extended period of time.

As a result, we find that a reasonable jury could find beyond a reasonable doubt that Mitchell unlawfully appropriated $5,640.00 from Knapp, without Knapp's effective consent, and with the intent to deprive Knapp of his money. For that reason, we find that legally sufficient evidence supported the jury's verdict. We overrule this issue.

## II.    Mitchell's Complaints Regarding the Restitution Hearing and Order Were Not Preserved

### A.    Background

On June 13, 2023, the trial court pronounced judgment in accordance with the jury's verdict and sentenced Mitchell to ten month's confinement in state jail, with no mention of restitution. That same day, the trial court entered its written judgment that reflected the ten-month sentence, waived court costs, reflected "$0.00" under "<u>Restitution</u>," credited Mitchell with three days' jail time, and stated that the sentence was imposed on "06-13-2023."

Nevertheless, on July 5, 2023, the trial court held a hearing on restitution that Mitchell attended by Zoom and his attorney attended in person. After a short hearing, the trial court found that Mitchell owed restitution to Knapp in the amount of $5,640.00. The next day, the trial court entered an amended judgment that sentenced Mitchell to ten months' confinement in state jail, assessed court costs of $290.00, and ordered restitution of $5,640.00, payable to Knapp. Mitchell did not assert any objection during the restitution hearing or to the order of restitution in the trial court.

On appeal, Mitchell complains that the trial court was not authorized to conduct a restitution hearing. He argues that, because restitution was not pronounced during the trial court's original sentencing, it could not later be imposed, citing *Alexander v. State*, 301 S.W.3d 361 (Tex. App.—Fort Worth 2009, no pet.). Mitchell also asserts that the trial court erred by conducting the restitution hearing without Mitchell's physical presence or a waiver of his physical presence. He argues that a defendant has the right to be physically present at all phases of the proceedings against him, absent a waiver of that right through his own conduct, citing *Lira v. State*, 666 S.W.3d 498, 512 (Tex. Crim. App. 2023). Because, he argues, a trial court is required to pronounce a defendant's sentence in his presence, restitution must be pronounced in the defendant's presence. He also asserts that, because he was not physically present at the restitution hearing, the amended judgment containing the restitution order is void.

The State responds that those complaints are subject to the preservation requirements of Rule 33.1 of the Texas Rules of Appellate Procedure. *See* TEX. R. APP. P. 33.1. Because Mitchell did not object to the proceedings in the trial court, the State argues, these issues were not preserved. We agree.

### B.      Preservation Requirements

"Generally, to preserve an issue for appellate review, the complaining party must first raise the issue in the trial court." *Garcia v. State*, 663 S.W.3d 92, 95 (Tex. Crim. App. 2022) (citing TEX. R. APP. P. 33.1(a)). "Preservation requirements ensure that the judicial system is not burdened by costly appeals and time-consuming retrials." *Id.* at 97 (citing *Gillenwaters v. State*, 205 S.W.3d 534, 537 (Tex. Crim. App. 2006)). "A timely objection allows the trial court an

10

opportunity to prevent or correct errors." *Id.* (citing *Gillenwaters*, 205 S.W.3d at 537). "Such a requirement also 'guarantees that opposing counsel will have a fair opportunity to respond to complaints[,]' and 'promotes the orderly and effective presentation of the case to the trier of fact.'" *Id.* (alteration in original) (quoting *Gillenwaters*, 205 S.W.3d at 537). That being said, an illegal sentence, i.e., a sentence that is not authorized by law, is void and not subject to the preservation requirements and may be asserted for the first time on appeal. *See Mizell v. State*, 119 S.W.3d 804, 806 (Tex. Crim. App. 2003); *Ex parte Pena*, 71 S.W.3d 336, 336 n.2 (Tex. Crim. App. 2002) (per curiam).

### C.    Restitution

"Restitution is a form of punishment, but it is also a crime victim's statutory right." *Johnson v. State*, 659 S.W.3d 464, 471 (Tex. App.—Texarkana 2022) (citing TEX. CODE CRIM. PROC. ANN. art. 42.037), *aff'd*, 680 S.W.3d 616 (Tex. Crim. App. 2023). As the Texas Court of Criminal Appeals has noted, restitution "serves a number of important purposes." *Burt v. State*, 445 S.W.3d 752, 756 (Tex. Crim. App. 2014). "First, it restores the victim to the 'status quo ante' position he was in before the offense." *Id.* (citing *Thompson v. State*, 557 S.W.2d 521, 525 (Tex. Crim. App. 1977)). "Second, restitution serves as appropriate punishment for the convicted criminal." *Id.* "Third, because restitution forces the offender to 'address and remedy the specific harm that he has caused,' it aids in the rehabilitation process as 'it forces the defendant to confront, in concrete terms, the harm his actions have caused.'" *Id.* (footnote omitted) (citations omitted). "Fourth, restitution acts as a deterrent to crime." *Id.* (citing *Hanna v. State*, 426 S.W.3d 87, 91 (Tex. Crim. App. 2014)). "Indeed, the law so favors crime victims'

11

compensation that our restitution statute requires the trial judge to justify his decision *not* to order restitution to a crime victim." *Id.* As a result, restitution statutes are construed "liberally to effectuate fairness to the victims of crime." *Id.* at 757 (citing *Hanna*, 426 S.W.3d at 91).

At the same time, "fairness to the defendant requires that his sentence be 'pronounced orally in his presence.'" *Id.* (quoting *Taylor v. State*, 131 S.W.3d 497, 500 (Tex. Crim. App. 2004)). Since the "written judgment is simply the 'declaration and embodiment' of that pronouncement[,] . . . when there is a conflict between the oral pronouncement and the written judgment, the oral pronouncement controls." *Id.* (quoting *Taylo*r, 131 S.W.3d at 502). As a result, a trial court is not authorized "to orally pronounce one sentence in front of the defendant, but then enter a different written judgment outside the defendant's presence." *Id.* (citing *Ex parte Madding*, 70 S.W.3d 131, 135 (Tex. Crim. App. 2002) (orig. proceeding)). "Rather, due process requires that the defendant be given fair notice of all of the terms of his sentence, so that he may object and offer a defense to any terms he believes are inappropriate." *Id.* (citing *Ex parte Madding*, 70 S.W.3d at 136).

Nevertheless, the Texas Court of Criminal Appeals has determined that restitution is not "'in' the closed curve of things that can make a 'sentence' legal or illegal." *Burg v. State*, 592 S.W.3d 444, 451, n.39 (Tex. Crim. App. 2020) (citing *Burt*, 445 S.W.3d at 756; *Idowu v. State*, 73 S.W.3d 918, 921–22 (Tex. Crim. App. 2002)). Further, the Texas Court of Criminal Appeals has held, at least when the appellant has an opportunity to object, that "[c]hallenges to restitution orders must be raised in the trial court to preserve them for appellate review." *Garcia*, 663 S.W.3d at 97; *see also Idowu v. State*, 73 S.W.3d 918, 921 (Tex. Crim. App. 2002) (holding that,

if an appellant "wishes to complain about the appropriateness of . . . a trial court's restitution order, he must do so in the trial court"), *abrogated on other grounds by Garcia*, 663 S.W.3d at 95; *Darnell v. State*, No. 06-21-00099-CR, 2022 WL 1159543, at \*5 (Tex. App.—Texarkana Apr. 14, 2022, no pet.) (mem. op., not designated for publication).

## D. Analysis

In this case, Mitchell complains that the trial court's restitution order in the amended judgment was invalid because the trial court did not order restitution at the June 13 punishment hearing[5] and because he was not physically present at the restitution hearing.[6] However, Mitchell had the opportunity to assert both of those complaints to the trial court. He could have objected to the restitution hearing and to the imposition of restitution on both of those bases at the restitution hearing but failed to do so. Instead, Mitchell fully participated in the hearing without objection and did not object when the trial court ordered restitution at the conclusion of that hearing. As a result, he was "given fair notice of all of the terms of his sentence" and was

---

[5]Mitchell relies on *Alexander* in support of his proposition that, if restitution was not ordered in the original pronouncement of punishment, it could not be imposed later. In that case, the trial court did not include restitution in its original pronouncement but included it, without a hearing, in its written judgment. *Alexander*, 301 S.W.3d at 364. However, as the court in *Burt* noted, "[T]he defendant was never put on notice that restitution might be ordered until it first appeared in the written judgment. That scenario leaves the defendant without notice and incapable of objecting or preparing a defense to the restitution order." *Burt*, 445 S.W.3d at 759–60. Because Alexander did not have the opportunity to object to the restitution order, whether he was required to preserve his complaint was not an issue.

[6]In his brief, Mitchell relies heavily on *Lira*. In that case, the Texas Court of Criminal Appeals held that "the trial court had no authority to preside over a videoconferenced plea hearing where the Appellants had not waived in person or in writing their right to be present." *Lira*, 666 S.W.3d at 506. However, the appellants in that case filed motions prior to the hearing and objected to the case being set for plea hearings by videoconference, asserting their right to be physically present at the hearing. *Id.* at 503. As a result, preservation of their complaints for appeal was not an issue in that case.

13

given the opportunity to "object and offer a defense to any terms he believe[d] [we]re inappropriate." *Burt*, 445 S.W.3d at 757.

Because Mitchell had the opportunity at trial to challenge the appropriateness of the restitution order and to object to his physical absence at the restitution hearing but failed to do so, he did not preserve those issues for our review.[7] *See Garcia*, 663 S.W.3d at 97. Further, because a restitution order is not among those "things that can make a 'sentence' legal or illegal," we find that the order is not void. *Burg*, 592 S.W.3d at 451. We overrule these issues.

## III.     The Amended Judgment Must Be Modified

"This Court has the power to correct and modify the judgment of the trial court for accuracy when the necessary data and information are part of the record." *Anthony v. State*, 531 S.W.3d 739, 743 (Tex. App.—Texarkana 2016, no pet.) (citing TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27 (Tex. Crim. App. 1993)). "We have the authority to modify the judgment to make the record speak the truth." *Minter v. State*, 570 S.W.3d 941, 944 (Tex. App.—Texarkana 2019, no pet.) (citing TEX. R. APP. P. 43.2(b); *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992)).

In this case, the record shows that the trial court pronounced judgment and sentenced Mitchell to ten month's confinement in state jail on June 13, 2023. That same day, the trial court entered its written judgment of conviction that reflected the ten-month sentence. Under "Date

---

[7]We recognize that our sister court of appeals recently held that an appellant's "right to be [physically] present at sentencing implicates the legality of a sentence and is not forfeited by a failure to object at trial." *Tates v. State*, No. 13-20-00280-CR, 2023 WL 3633492, at *4 (Tex. App.—Corpus Christi–Edinburg May 25, 2023, pet. granted) (citing *Burg*, 592 S.W.3d at 449). In that case, the appellant appeared at the entire punishment hearing by videoconference, without objection. That included the trial court sentencing Tates to five years' imprisonment. *Id.* at *3. However, unlike restitution, as the court in *Burg* noted, "a term of years" is "clearly 'in' the closed curve of things that make a 'sentence' legal or illegal." *Burg*, 592 S.W.3d at 451.

Sentence Imposed" and "<u>Date Sentence Commences</u>," the judgment stated "06-13-2023." The judgment also credited Mitchell with three days' jail time. Nevertheless, when the trial court entered its amended judgment of conviction by jury that included the restitution of $5,640.00 payable to Knapp, the amended judgment stated "7/6/2023" under both "Date Sentence Imposed" and "<u>Date Sentence Commences</u>" and credited Mitchell with twenty-six days of jail-time credit.

Because the trial court pronounced sentence on June 13, 2023, we modify the amended judgment of conviction to reflect the correct date the sentence was imposed and commenced and the correct amount of jail-time credit.

## IV. Disposition

We modify the amended judgment of conviction to reflect "06-13-2023" under "Date Sentence Imposed" and "<u>Date Sentence Commences</u>" and to reflect three days of jail-time credit. We affirm the trial court's judgment, as modified.

Jeff Rambin
Justice

Date Submitted:     June 12, 2024
Date Decided:       June 13, 2024

Do Not Publish